[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

Nos. 11-14829 & 11-15945
————————————————

Agency No. A041-893-419

RONEL RAMOS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petitions for Review of a Decision of
the Board of Immigration Appeals

————————————————

(February 19, 2013)

Before CARNES and COX, Circuit Judges, and RESTANI,[*] Judge.

COX, Circuit Judge:

_____

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

Ronel Ramos was charged with removability for committing an "aggravated felony" within the meaning of 8 U.S.C. § 1227(a)(2)(A)(iii) when he pled guilty to violating Georgia Code § 16-8-14, a statute that criminalizes shoplifting. An Immigration Judge sustained the charge, denied Ramos's application for cancellation of removal, and ordered Ramos deported. Ramos appealed to the Board of Immigration Appeals. The Board dismissed his appeal, reasoning that a § 16-8-14 conviction necessarily qualifies as an aggravated felony. The Board then denied Ramos's motion to reconsider. Ramos petitioned this court to review both of the Board's rulings. We conclude that a § 16-8-14 conviction does not categorically qualify as an aggravated felony. We also conclude that Ramos's record of conviction does not establish that he committed an aggravated felony. We therefore grant Ramos's petition and reverse the Board's rulings.

## I. FACTS

Georgia Code § 16-8-14 (hereinafter the "Georgia statute") reads as follows, in relevant part:

> (a) A person commits the offense of theft by shoplifting when [he] . . . , with the intent of *appropriating merchandise to his own use without paying for the same* or *to deprive the owner of possession thereof or of the value thereof, in whole or in part* . . . :
>     (1) Conceals or takes possession of the goods or merchandise of any store or retail establishment[.]

Ga. Code Ann. § 16-8-14 (2004) (emphasis added).

2

Ramos, a citizen of the Philippines and a lawful permanent resident of the United States, was charged under the Georgia statute for taking three video games from a Costco "with the intent of appropriating [the] merchandise to his own use without paying for same." (Admin. R. at 000164.) He pled guilty to this charge and was sentenced to twelve months' imprisonment to be served on probation.

The U.S. Attorney General then served Ramos with a notice to appear for removal proceedings, listing two charges of removability. One charge involved three additional convictions (Burglary from an Unoccupied Dwelling, Grand Theft, and Theft from a Dwelling) that, the Government claimed, together rendered Ramos removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for committing "two or more crimes involving moral turpitude." The other charge: Ramos's conviction under the Georgia statute rendered him removable because it constituted an "aggravated felony" within the meaning of § 1227(a)(2)(A)(iii).

## II. PROCEDURAL HISTORY

After a hearing, an Immigration Judge sustained the Government's charge of removability and denied Ramos's application for cancellation of removal. The Immigration Judge's rulings were based only on Ramos's shoplifting conviction under the Georgia statute and did not address the Government's § 1227(a)(2)(A)(ii) charge. The Immigration Judge then ordered Ramos removed. Ramos appealed to the Board of Immigration Appeals. The Board dismissed his appeal, reasoning that

3

a conviction under the Georgia statute necessarily constitutes an aggravated felony within the meaning of § 1227(a)(2)(A)(iii), so Ramos had committed an aggravated felony and was removable. Ramos petitioned this court to review the dismissal and, on the same day, moved the Board to reconsider. The Board denied his motion on the same basis that it dismissed his appeal. Ramos then petitioned this court to review the Board's denial of his motion for reconsideration.

This court granted the parties' joint motion to consolidate the two appeals.

### III. ISSUE ON APPEAL

Section 1227(a)(2)(A)(iii) renders an alien removable if he "is convicted of an aggravated felony at any time after admission." Though the section does not define "aggravated felony," that term is defined in 8 U.S.C. § 1101(a)(43)(G) to include "theft offense[s] . . . for which the term of imprisonment [is] at least one year."[1] In charging Ramos with removability under § 1227(a)(2)(A)(iii), the Government alleged that his conviction under the Georgia statute constituted a "theft offense" within the meaning of § 1101(a)(43)(G). If Ramos's conviction constituted a "theft offense," it qualifies as an aggravated felony and Ramos is removable. The issue on appeal, then, is whether Ramos's conviction under the Georgia statute constituted a theft offense.

---

[1] Ramos does not dispute that the twelve-month sentence imposed qualified as a § 1101(a)(43)(G) "term of imprisonment."

4

## IV. DISCUSSION

In deciding whether a conviction constitutes a theft offense, this court "first look[s] to the fact of conviction and the statutory definition of the offense." *Jaggernauth v. U.S. Att'y Gen.*, 432 F.3d 1346, 1353 (11th Cir. 2005). If a conviction under a particular statute does not categorically qualify as a theft offense, we then look to the record of conviction—including documents involving the charge, plea agreement, or sentence—to determine whether it clearly establishes that the alien's conviction qualifies as a theft offense. *See id.* at 1355.

The Government argues that Ramos was convicted of a theft offense because the Georgia statute is categorical: any conviction under that statute constitutes a theft offense. But Ramos argues that the Georgia statute is "divisible." That is, the Georgia statute punishes some conduct that qualifies as a theft offense and some conduct that does not qualify as a theft offense. Because the statute is divisible, Ramos contends, the mere fact of his conviction is insufficient to establish that he committed a theft offense, and the court must look to the record of conviction.

### A.

The initial inquiry on appeal is whether the Georgia statute is categorical or divisible. To conclude that the Georgia statute is divisible, we must determine that it punishes conduct that does not qualify as a theft offense within the meaning of

5

§ 1101(a)(43)(G).    The parties agree that we review the interpretation of the Georgia statute de novo.[2]

This inquiry first prompts the question of how "theft offense" is defined. The Supreme Court has held that when Congress has listed a specific crime, it means to refer to that crime in "the generic sense in which the term is now used in the criminal codes of most States."  *Taylor v. United States*, 495 U.S. 575, 598, 110 S. Ct. 2143, 2158 (1990).    The Court later applied this principle to acknowledge that the term "theft offense," as § 1101(a)(43)(G) uses it, denotes the "generic definition of theft."  *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 188–89, 127 S. Ct. 815, 819–20 (2007).   That "generic definition," the Court recognized, has been stated by the Board and by many of our sister circuits as "the taking of property . . . with the *criminal intent to deprive* the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent."  *Id.* at 189, 127 S. Ct. at 820 (quoting *Penuliar v. Gonzales*, 435 F.3d 961, 969 (9th Cir. 2006)) (emphasis added) (internal quotation marks omitted); *see also United States v. Vasquez-Flores*, 265 F.3d 1122, 1125 (10th Cir. 2001) (recognizing verbatim this

---

[2] We owe *Chevron* deference to the Board's interpretations of the statutes it has been empowered by Congress to administer.  *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425, 119 S. Ct. 1439, 1445–46 (1999).   We owe no *Chevron* deference to the Board's interpretation of the Georgia statute, which the Board has no power to administer.  Because the parties dispute only the Board's interpretation of the Georgia statute, the Board's interpretation is not entitled to *Chevron* deference.

"generic definition"); *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001) (same); *In re V-Z-S-*, 22 I. & N. Dec. 1338, 1346 (BIA 2000) (same).

In *Jaggernauth v. U.S. Attorney General*, 432 F.3d 1346, we accepted this generic definition and held that a theft statute that included two disjunctive intent requirements—an intent to *deprive* and an intent to *appropriate*—was divisible. Because we conclude that *Jaggernauth* controls the result in this case, we discuss it in detail here.

In *Jaggernauth*, we considered whether a lawful permanent resident of the United States had committed a theft offense within the meaning of § 1101(a)(43)(G) when she was convicted of grand theft under Florida Statutes § 812.014(1) (hereinafter the "Florida statute"). The Florida statute reads as follows:

> A person commits a theft if he or she knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently:
> (a) Deprive the other person of a right to the property or a benefit from the property.
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1). The charging document submitted against the alien "tracked the general language" of the statute but "did not specify under which subsection [she] was charged." *Jaggernauth*, 432 F.3d at 1349.

7

The Attorney General then charged her with removability under § 1227(a)(2)(A)(iii).  An Immigration Judge sustained the charge and ordered her deported.  The Board dismissed the alien's appeal, but it granted her motion to reconsider the dismissal.  On reconsideration, the Board affirmed the Immigration Judge's ruling on the grounds that, although the Florida statute appeared to be divisible, the record of conviction established that the alien was charged with a theft offense.

We reversed the Board's holding.  On de novo review, we concluded that the Florida statute encompassed two distinct mens rea: an intent to deprive and an intent to appropriate.  *Id.* at 1353–54.  We then determined that the Florida statute's intent-to-appropriate clause (subpart (b)) could not include a "criminal intent to deprive the owner of the rights and benefits of ownership," as the generic definition of theft requires.  *Id.* at 1353.  To interpret both subparts to involve an intent to deprive, we reasoned, "would make subpart (b) superfluous, thereby violating the well-established rule of statutory construction that courts must give effect, if possible, to every clause and every word of a statute."  *Id.* at 1354. That interpretation would also "ignore the plain meaning of appropriation," which does "not necessarily entail that the property owner be deprived [of] his or her rights to the property's use or benefits."  *Id.* (internal quotation marks omitted).  Because

8

the statute punishes both crimes that are theft offenses and crimes that are not, the statute is divisible. *Id.*

Because the Florida statute is divisible, the fact of the alien's conviction alone did not necessarily mean she had committed a theft offense. The Board was therefore permitted to look beyond the fact of conviction to the record of conviction. *Id.* at 1355. The conviction record (which included the charging document, the plea, and sentencing documents) referenced only the Florida statute's general language and nowhere specified under which subpart the alien had been convicted, leaving open the possibility that the alien was convicted for theft with intent to appropriate only. *Id.* For that reason, we held that the Government failed to clearly establish that the alien was convicted of a theft offense. We vacated the Board's order of removal.

We find no meaningful difference between the Florida statute we interpreted in *Jaggernauth* and the Georgia statute we consider here. Both statutes unmistakably require either an intent to deprive (which falls under the generic definition of theft) or an intent to appropriate (which does not). *Accord K-Mart Corp. v. Coker*, 410 S.E.2d 425, 427 (Ga. 1991) (recognizing that the Georgia statute contemplates three alternate forms of mens rea: the intent to appropriate, the intent to deprive an owner of the possession of merchandise, and the intent to deprive an owner of the value of merchandise). Although the Georgia statute

9

qualifies the intent-to-appropriate clause with the phrase "without paying for the same"—which the Florida statute does not do—the phrase does not change the meaning of the clause. We fail to see how a thief's intent to appropriate merchandise to his own use transforms into an intent to deprive a right or benefit of ownership simply because the thief tenders no payment.

For the reasons set forth in *Jaggernauth*, a conviction under the Georgia statute for shoplifting with intent to "appropriat[e] merchandise to [one's] own use without paying for the same" (the intent on which the charge against Ramos was based) does not constitute a theft offense within the meaning of § 1101(a)(43)(G). The Georgia statute punishes both conduct that qualifies as a theft offense and conduct that does not. We therefore hold that the Georgia statute is divisible.

The Government contends that the Supreme Court "clarified" *Jaggernauth* in *Duenas-Alvarez*. But *Duenas-Alvarez* is distinguishable from this case. In *Duenas-Alvarez*, the Supreme Court was asked to interpret a California statute that criminalizes theft. The petitioner in that case argued that the statute was divisible because it punished both the principal of a theft and anyone who aids or abets that theft. The petitioner's rather creative reasoning went this way: Aiders and abettors, in general, are liable not only for the crimes they specifically intended others to commit but also for the criminal acts that were natural and probable consequences of the specifically intended crimes. So, aiders and abettors of theft

10

include individuals who specifically intended a principal to commit theft, on one hand, and on the other, individuals who specifically intended a different crime of which theft was only a natural and probable consequence. In theory, then, the California statute could punish individuals who never specifically intended a theft. But the generic definition of theft requires a specific intent to deprive. The statute could therefore punish conduct that was not a theft offense within the meaning of § 1101(a)(43)(G), and the statute was divisible.

The Supreme Court rejected this argument. The Court concluded that "to find that a state statute creates a crime outside the generic definition" of theft "requires more than the application of legal imagination to the state statute's language." *Id.* at 193, 127 S. Ct. at 822. Instead, the determination that a statute is divisible "requires a realistic probability . . . that the State would apply its statute to conduct that falls outside the generic definition." *Id.* Seeing no support in the statute's language for the petitioner's construction, the Court required him to point to case law supporting the proposition that California would prosecute conduct under the theft statute that fell outside the generic definition of theft. Because the petitioner could make no such showing, the statute was not divisible.

Here, the Government argues that, under *Duenas-Alvarez*, Ramos must show that Georgia would use the Georgia statute to prosecute conduct falling outside the generic definition of theft; if he cannot, the Government argues, the statute cannot

11

be considered divisible.  But *Duenas-Alvarez* does not require this showing when the statutory language itself, rather than "the application of legal imagination" to that language, creates the "realistic probability" that a state would apply the statute to conduct beyond the generic definition.  Here, the statute expressly requires alternate intents.  *Accord Coker*, 410 S.E.2d at 427.  One of those intents (the one at issue here) does not render the crime a theft offense.  The statute's language therefore creates the "realistic probability" that it will punish crimes that do qualify as theft offenses and crimes that do not.  *Duenas-Alvarez* does not control this case.

B.

Because the Georgia statute is divisible, we look to the record of conviction to determine whether Ramos was convicted of a theft offense.  *See Jaggernauth*, 432 F.3d at 1355.  This inquiry need not detain us for long.  The record of conviction consists of the charging document, Ramos's plea agreement, and a sentencing document.  Only the charging document specifies that Ramos was charged under the Georgia statute.  That document accuses him of taking the video games from Costco "with the intent of appropriating said merchandise to his own use without paying for same."  (Admin R. at 000164.)  As we explained above, a conviction for theft of merchandise with intent to appropriate it does not constitute a theft offense: the intent to appropriate does not encompass the intent to deprive,

12

as the generic definition of theft requires. The record of conviction thus fails to show that Ramos was convicted of a theft offense. The Government makes no argument counter to this conclusion and effectively concedes it.

## V. CONCLUSION

We conclude that the Georgia statute is divisible and that Ramos's record of conviction does not show that he committed a theft offense. If Ramos was not convicted of a theft offense, he was not convicted of an aggravated felony, and his conviction cannot provide the basis for his removal under § 1227(a)(2)(A)(iii). We grant Ramos's petition and reverse the Board's dismissal of his appeal. His appeal of the Board's denial of the motion for reconsideration is moot.

Neither the Immigration Judge nor the Board considered, however, whether Ramos was removable under § 1227(a)(2)(A)(ii) on the grounds that he committed multiple crimes involving moral turpitude. We remand this case to the Board to enable consideration of the alternate grounds advanced by the Government for Ramos's removal.

PETITION GRANTED.

13