[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15532
Non-Argument Calendar

_____

Agency No. A071-502-702

CRISTINA JAIMES-LOPEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 10, 2017)

Before MARCUS, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Cristina Jaimes-Lopez seeks review of the decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") order of removal rendered on the ground that she was removable from the United States for having been "convicted of a crime involving moral turpitude," 8 U.S.C. § 1227(a)(2)(A)(ii), due to her conviction for armed robbery under Fla. Stat. § 812.13(2)(a).  On appeal, Jaimes-Lopez argues that the BIA failed to properly apply the "categorical approach" when determining that her conviction qualified as a crime involving moral turpitude.  After careful review, we deny the petition.

## I.

We review *de novo* the legal question of whether a conviction qualifies as a crime involving moral turpitude.  *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1240 (11th Cir. 2016).  We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).

Jaimes-Lopez is removable if she committed a "crime involving moral turpitude."  *See* 8 U.S.C. § 1227(a)(2)(A)(i).[1]  The term "moral turpitude" is not

---

[1] In full, 8 U.S.C. § 1227(a)(2)(A)(i) provides,

Any alien who—

(I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and

defined by the statute, but we have "defined a crime of moral turpitude as an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Walker v. U.S. Atty. Gen.*, 783 F.3d 1226, 1229 (11th Cir. 2015) (alteration adopted) (internal quotation marks omitted).  We have held, for varying reasons, "that uttering a forged instrument, resisting an officer with violence, criminal reckless conduct, second-degree arson, aggravated battery, aggravated child abuse, and misprision of a felony are all crimes involving moral turpitude." *Gelin*, 837 F.3d at 1240–41.

In deciding whether a particular offense constitutes a crime involving moral turpitude, we generally apply what has been termed the "categorical approach." *Id.* at 1241.  Under this approach, "we consider only the fact of conviction and the statutory definition of the offense, rather than the specific facts underlying the defendant's case." *Id.*  "In doing so, we ask whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." *Id.* (internal quotation marks omitted).

When a statute is "divisible"—meaning that it sets forth alternative elements of the same crime—we may apply what has been termed the "modified categorical

---

> (II) is convicted of a crime for which a sentence of one year or longer may be imposed,
>
> is deportable.

3

approach." *Id.* This approach allows courts to look beyond the fact of conviction and consider a limited class of documents to determine under which alternative version of the statutory elements a defendant was convicted. *Id.*; *see Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013).

## II.

The statute at issue is the Florida robbery statute, Fla. Stat. § 812.13. Florida defines robbery as

> the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

Fla. Stat. § 812.13(1). In addition, there is no dispute that Jaimes-Lopez was convicted of Fla. Stat. § 812.13(2)(a), which makes it a first-degree felony "[i]f in the course of committing the robbery the offender carried a firearm or other deadly weapon." Fla. Stat. § 812.13(2)(a).

The BIA determined that Jaimes-Lopez's robbery conviction under § 812.13(2)(a) qualified as a crime involving moral turpitude. Relying on long-standing BIA precedent, the BIA agreed with the IJ that "robbery is a crime of moral turpitude." *See Matter of Martin*, 18 I. & N. Dec. 226, 227 (BIA 1982) ("[R]obbery is universally recognized as a crime involving moral turpitude."). In addition, the BIA explained, "the robbery statute under which the respondent was

4

convicted involves the additional aggravating factor of the use of a firearm or deadly weapon."

Jaimes-Lopez mainly argues that the BIA failed to properly apply the categorical approach because the BIA failed to compare the state statute to a comparable federal statute. In Jaimes-Lopez's view, the categorical approach requires two steps. At step one, the elements of the state statute must be compared with "the analogous federal statute dealing with the crime in question." Appellant's Initial Br. at 15. If the state statute criminalizes conduct the comparable federal statute does not, a conviction under the statute is not categorically a crime involving moral turpitude. The underlying reason for that rule, Jaimes-Lopez states, is that immigration is a federal matter, so all persons "need to be held to the same federal standard." *Id.* at 38. If the elements of the state statute match the federal counterpart, "step two involves looking at the inherent nature of the elements to determine whether the act was one of baseness, vileness, depravity or against the societal norms and duties between men," Jaimes-Lopez asserts. *Id.* at 15. According to Jaimes-Lopez, her robbery conviction is not a crime involving moral turpitude because the Florida robbery statute is broader than the corresponding federal robbery statute, 18 U.S.C. § 1951.

## A.

Here, the BIA did not err in applying the categorical approach to determine that Jaimes-Lopez's armed robbery conviction under Fla. Stat. § 812.13(2)(a) qualified as a crime involving moral turpitude. Jaimes-Lopez's "step one" is not part of the analysis we use to determine crimes of moral turpitude. That is, we do not compare the elements of the state statute with the elements of a comparable federal offense, as the BIA correctly recognized. *See* BIA Decision at 3 (noting that it "was not obligated to compare the state statute with a comparable federal statute to determine whether her conviction involves moral turpitude").

Rather, as mentioned previously, when applying the categorical approach we look to the statutory definition of the offense to determine whether it meets the federal standard of a crime involving moral turpitude. *Gelin*, 837 F.3d at 1241. Our precedent is consistent on this point. *See Cano v. U.S. Att'y Gen.*, 709 F.3d 1052, 1053 (11th Cir. 2013); *Keungne v. United States Att'y Gen.*, 561 F.3d 1281, 1284 n.3 (11th Cir. 2009); *Vuksanovic v. U.S. Att'y Gen.*, 439 F.3d 1308, 1311 (2006); *Sosa-Martinez v. U.S. Att'y Gen.*, 420 F.3d 1338, 1341–42 (11th Cir. 2005); *Garcia v. Att'y Gen. of U.S.*, 329 F.3d 1217, 1222 (11th Cir. 2003); *Itani v. Ashcroft*, 298 F.3d 1213, 1215–16 (11th Cir. 2002) ("Whether a crime involves the depravity or fraud necessary to be one of moral turpitude depends upon the inherent nature of the offense, as defined in the relevant statute . . . ."). Likewise,

Jaimes-Lopez has identified no precedent from the Supreme Court applying her proposed analysis to crimes of moral turpitude.

To be sure, in some immigration matters we do compare the elements of the state crime with the elements of a corresponding federal crime. For example, to determine whether a conviction qualifies an "aggravated felony" under the categorical approach, we generally look to "whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (internal quotation marks omitted); *see also Donawa v. United States*, 735 F.3d 1275, 1280 (11th Cir. 2013). The question in *Moncrieffe* was whether a state drug conviction qualified as the aggravated felony of "illicit trafficking in a controlled substance," which the Court previously had held "encompasses all state offenses that 'proscrib[e] conduct punishable as a felony under the [the federal Controlled Substances Act].'" *Moncrieffe*, 133 S. Ct. at 1685 (quoting *Lopez v. Gonzalez*, 549 U.S. 47, 60 (2006)). Thus, the resolution of that question depended on a comparison between the state definition of the crime and the "generically defined federal crime." *Id.* at 1685–86.

Even within the realm of aggravated felonies, however, there is not always a federal crime to serve as a point of comparison. For example, in *Ramos v. United States Attorney General*, 709 F.3d 1066, 1069 (11th Cir. 2013), we addressed

whether a state conviction constituted a "theft offense" as that term is defined in the aggravated felony statute. We explained that "when Congress has listed a specific crime, it means to refer to that crime in the generic sense in which the term is now used in the criminal codes of most States." *Id.* (internal quotation marks omitted). So, "the term 'theft offense,' as § 1101(a)(43)(G) uses it, denotes the generic definition of theft." *Id.* (internal quotation marks omitted). Therefore, the analysis in *Ramos* depended on a comparison between the state offense and the generic definition of theft implicitly adopted by Congress. *See id.* at 1169–71.

What these examples from *Moncrieffe* and *Ramos* show is that there is not some uniform requirement that a state offense must be compared with a federal offense for all immigration matters, as Jaimes-Lopez contends, but that the appropriate analysis depends on the specific statutory language at issue. Here, the relevant statutory language is "crime involving moral turpitude," not "robbery." Thus, the relevant point of comparison is the standard of "moral turpitude"—which is a uniform standard[2]—and not some generic definition of robbery. So, in applying the categorical approach in this context, we consider "only the fact of conviction and the statutory definition of the offense" and ask "whether the least

_____

[2] The Supreme Court has indicated that courts should "look to the manner in which the term 'moral turpitude' has been applied by judicial decision." *Jordan v. De George*, 341 U.S. 223, 227 (1951).

8

culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." *Gelin*, 837 F.3d at 1241.

For these reasons, we reject Jaimes-Lopez's argument that her robbery conviction under Fla. Stat. § 812.13(2)(a) did not qualify as a crime of moral turpitude because it did not match the elements of the federal definition of robbery. We also see no indication that the BIA improperly relied on the underlying facts of Jaimes-Lopez's conduct in its decision.  Thus, the BIA did not err in its analysis.

**B.**

We also agree with the BIA's ultimate determination that Jaimes-Lopez's conviction under § 812.13(2)(a) categorically qualifies as a crime involving moral turpitude.  For this reason, we need not, and do not, decide whether the Florida statute is divisible or indivisible.  *See Gelin*, 837 F.3d at 1243.

The federal circuit courts have long considered theft offenses, including robbery, to involve moral turpitude.  *See Mendoza v. Holder*, 623 F.3d 1299, 1303–04 & nn. 8, 9 (9th Cir. 2010) (holding that robbery under California law categorically qualified as a crime involving moral turpitude, and noting "precedent in this and other circuits that theft crimes are [crimes involving moral turpitude]"); *Soetarto v. INS*, 516 F.2d 778, 780 (7th Cir. 1975) ("Theft has always been held to involve moral turpitude, regardless of the sentence imposed or the amount stolen."); *McKenzie v. Savoretti*, 200 F.2d 546, 548 (5th Cir. 1952) (stating that

"crimes of forgery, larceny, uttering, and stealing . . . are regarded as involving moral turpitude"); *Cerami v. Uhl*, 78 F.2d 698, 698 (2d Cir. 1935) (concluding that a robbery conviction involved moral turpitude). So, too, has the BIA. *See Matter of Martin*, 18 I. & N. Dec. at 227 ("It is clear . . . that robbery is universally recognized as a crime involving moral turpitude."); *Matter of De La Nues*, 18 I. & N. Dec. 140, 145 (BIA 1981) ("Burglary and theft or larceny, whether grand or petty, are crimes involving moral turpitude.").

Jaimes-Lopez does not dispute the general proposition that robbery, in some generic sense, is a crime involving moral turpitude. And while she attempts to highlight differences between the state definition of robbery and the federal definition of robbery, we have held in another context that the Florida definition of robbery in § 812.13(1) is a "clear equivalent[]" of the "generic form of robbery." *United States v. Lockley*, 632 F.3d 1238, 1242 (11th Cir. 2011) (analyzing § 812.13(1) under the categorical approach for purposes of the Armed Career Criminal Act). At the very least, *Lockley*'s holding suggests little reason for us in this case to deviate from the general consensus that robbery and theft offenses involve moral turpitude.

Turning to the specific elements of the statute, this Court in *Lockley*, after surveying Florida Law, summarized the elements as follows:

> commission of robbery in violation of Fla. Stat. § 812.13(1) necessarily requires that the defendant (1) commit a taking of money

10

or other property from another person or in the custody of another person (2) with the intent to permanently or temporarily deprive the person of the money or property or any benefit thereof (3) using force, violence, or an intentional threat of imminent force or violence against another coupled with an apparent ability to use that force or violence, or by causing the person to fear death or great bodily harm (4) where the money or property has value.

*Id.* at 1242–43; *see also United States v. Seabrooks*, 839 F.3d 1326, 1340–41 (11th Cir. 2016) (summarizing our decision in *Lockley*). The Supreme Court of Florida has held that "the specific intent to commit robbery is the intent to steal." *Daniels v. State*, 587 So. 2d 460, 462 (Fla. 1991); *see also Estremera v. State*, 89 So. 3d 291, 292–93 (Fla. Dist. Ct. App. 2012) ("[P]etit theft is a necessarily lesser included offense of robbery."). In addition, because we are specifically concerned with armed robbery under § 812.13(2)(a), the state must prove that the defendant "carried a firearm or other deadly weapon" while committing the robbery. Fla. Stat. § 812.13(2)(a).

Thus, robbery under § 812.13(2)(a) requires proof of a taking with the specific intent to steal, which alone suggests a disregard for the "private and social duties which a man owes to his fellow men, or to society in general." *See Cano*, 709 F.3d at 1054; *see McKenzie*, 200 F.2d at 548 ("[C]rimes of . . . larceny [and]. . . stealing . . . are regarded as involving moral turpitude."). In addition, the defendant must use "force, violence, assault, or putting in fear" in the course of the taking, which further reinforces the baseness or depravity of the conduct required.

11

Fla. Stat. § 812.13(1).   As we explained in *Lockley*, robbery under Fla. Stat. § 812.13(1) is "an aggressive and potentially violent act," *id.* at 1246, requiring either the use physical force or violence, the threat of imminent force or violence coupled with an apparent ability to use that force or violence, or "some act that puts the victim in fear of death or great bodily harm." *Lockley*, 632 F.3d at 1242; *cf. Cano*, 709 F.3d at 1054 (concluding that resisting an officer with violence constitutes a crime involving moral turpitude in part because it "involves the use or threat of physical force").   Finally, although the statute does not require the "use" of a firearm or deadly weapon, the fact that a firearm or deadly weapon is "carried" during a robbery indicates its potential to be used by the defendant in furtherance of the robbery.   *Cf. Sosa-Martinez*, 420 F.3d at 1342 (holding that an intentional battery that involves the use of a deadly weapon constitutes a crime of moral turpitude).

All of these factors combined lead us to the conclusion that the least culpable conduct necessary to sustain a conviction for armed robbery under Fla. Stat. § 812.13(2)(a) involves moral turpitude.   Accordingly, the BIA did not err in finding Jaimes-Lopez removable for having been convicted of that offense.   *See* 8 U.S.C. § 1227(a)(2)(A)(ii).

**PETITION DENIED.**[3]

---

[3] Jaimes-Lopez also argues that her offense does not qualify as a firearms offense, *see* 8 U.S.C. § 1227(a)(2)(C), but the BIA did not address the IJ's determination on that ground for removal, so we do not address it, either.