ROSENBAUM, Circuit Judge,
joined as to Section II by MARTIN, Circuit Judge, and joined as to Sections U.A., II.B.l., and II.B.2.a by JORDAN, Circuit Judge, dissenting:
No question about it: a crime called “felony battery” sure sounds like a violent crime. But sometimes intuition' can be wrong. See Samuel Johnson v. United States, — U.S. —, 135 S.Ct. 2551, 2560, 192 L.Ed.2d 569 (2015) (suggesting that Connecticut’s offense of “rioting at a correctional institution,” a crime that “certainly sounds like a violent felony,” may not, in fact, have qualified as a violent felony under the now-invalidated residual clause of the Armed Career Criminal Act (“ACCA”)).[1] So we evaluate whether a crime qualifies as a crime of violence under the federal definition of that term of art by *1315 conducting legal analysis and applying Supreme Court precedent.
This case raises the question of whether Florida felony battery always and necessarily involves the “use ... of physical force against the person of another,” under the federal definition of “crime of violence” as used in the U.S. Sentencing Guidelines Manual (“U.S.S.G.”). See U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (U.S. Sentencing Comm’n 2014). The Supreme Court has given us clear guidance for finding the answer to this question. And following it leads to a single answer: Florida felony battery does not satisfy the federal definition for a “crime of violence,” despite what intuition might otherwise tell us.
As relevant here, a crime is a “crime of violence” if it “has as an element the use ... of physical force against the person of another.” U.S.S.G. § 2L1.2 cmt. n.l(B)(iii). Florida felony battery has two elements we must examine. In Curtis Johnson v. United States, 559 U.S. 133, 138-143, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), the Supreme Court already told us that the first one does not satisfy the elements clause. And a trio of Supreme Court cases — Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), United States v. Castleman, — U.S. —, 134 S.Ct. 1405, 188 L.Ed.2d 426 (2014), and Voisine v. United States, — U.S. —, 136 S.Ct. 2272, 195 L.Ed.2d 736 (2016) — just as surely demands the conclusion that the second doesn’t, either.
The Majority Opinion reaches the opposite conclusion by attributing to Curtis Johnson a rule that the Supreme Court has expressly told us it did not establish and by ignoring Supreme Court precedent. We cannot do that. Because Supreme Court precedent requires the conclusion that felony battery, when committed by mere touch, does not contain an element involving “the use ... of physical force against the person of another,” I respectfully dissent.
1. Supreme Court precedent requires the conclusion that Florida felony battery does not contain an element involving “the use ... of physical force against the person of another.”
Two elements comprise Florida felony battery: a person must (1) “[actually and intentionally touch[] or strike[] another person against the will of the other;” and (2) “[c]ause[] great bodily harm, permanent disability, or permanent disfigurement.” Fla. Stat. § 784.041(1). The Supreme Court has lit the way for us to determine whether either of these elements qualifies as one involving “the use ... of physical force against the person of another” (“elements clause”). U.S.S.G. § 2L1.2 cmt. n.l(B)(iii).
Concerning the first element, the Supreme Court already held that it fails to satisfy the “physical force” requirement of the elements clause when the crime is committed by mere touch. In Curtis Johnson, 559 U.S. 133, 130 S.Ct. 1265, 176 L.Ed.2d 1, the Supreme Court considered whether Florida simple battery, a crime that consists of the exact same element, word-for-word, as the first element of Florida felony battery, necessarily and always must involve “the use ... of physical force against the person of another.” It held that it need not. We are bound by that ruling.[2]
*1316 As to the second element — the causation of “great bodily harm, permanent disability, or permanent disfigurement” — three other Supreme Court cases dictate that that element cannot satisfy the “use” requirement of the elements clause where, as here, the statute does not require any kind of intent at all to cause harm.
Leocal, Castleman, and Voisine provide important guidance on the meaning of “use” in the elements clause.[3] They lead to the conclusion that where the crime has no element requiring intent to injure or to engage in an act that has a substantial likelihood of harming another, any harm that results from the prohibited conduct cannot, in and of itself, 'satisfy-the elements clause.
In Leocal, the Supreme Court considered whether the Florida crime of driving under the influence of alcohol- (“DUI”) and causing serious bodily injury, in violation of Fla. Stat. § 316.193(3)(c)(2), satisfied the definition of “crime of violence” under, among other things, 18 U.S.C. § 16⅛ “elements clause.”[4] The Court characterized the issue in Leocal as concerning"“whether state DUI offenses ... which either do not have a mens rea component or require only a showing of negligence in the operation of a vehicle, qualify as a crime of violence.” 543 U.S. at 6, 125 S.Ct. 377.
As the Court saw it, the key consideration under the “elements clause” concerned the requirement that a crime of violence be one involving the “use ... of physical force against the person or property of another.” Id. at 9, 125 S.Ct. 377 (emphasis omitted). And that phrase, the Court reasoned, “most naturally suggests a higher degree of intent than negligent or merely accidental conduct.” Id. (citation omitted). So the Court held that DUI— even DUI involving negligence — does not satisfy the “elements clause.” Id. at 9-10, 125 S.Ct. 377. ■ Significantly, the Court reached this conclusion despite the fact that, like Florida felony battery, the Florida DUI statute had as an element the requirement that “serious bodily injury” have occurred as a result of the DUI. So Leocal suggests that an element that requires only grievous bodily injury or even death cannot satisfy the elements clause.
Ten years later, the Supreme Court revisited Leocal in Castleman. Castleman described Leocal as having held that “ ‘use’ requires active employment,” and “ ‘use’ of force must entail ‘a higher degree of intent than negligent or merely accidental conduct.’ ” Castleman, 134 S.Ct. at 1414 n.8 (quoting Leocal, 543 U.S. at 9, 125 S.Ct. 377) & 1415 (quoting Leocal, 543 U.S. at 9, 125 S.Ct. 377). Though the Court found that “intentionálly or knowingly causing] bodily injury to” another required the “use” of physical force, it expressly left open the question of whether “the merely reckless causation of bodily injury” may be a “use” of force under, the similar definition of “misdemeanor crime of domestic violence.” Id. at 1414.
Wé did hot have to wait too long to learn the answer to that question. Two years later, in Voisine, the Supreme Court held that a reckless domestic assault involves the “use” of physical force under the definition of “misdemeanor crime of domestic *1317 violence.” 136 S.Ct. 2272. In reaching this determination, the Court rested on the definition of “use,” which it described as “the act of employing something.” Id. at 2278 (citations and quotation marks omitted). Based on this definition, the Court observed that the word “use” “does not demand that the person applying force have the purpose or practical certainty that it will cause harm,” but “use” does anticipate the “understanding that it is substantially likely to do so.”[5] Id. at 2279.
We must apply the lessons of the Leocal/Castleman/Voisine trilogy when we consider whether the second element of felony battery — the causation of “great bodily harm, permanent disability, or permanent disfigurement” — requires the “use” of physical force. Since we know from this line of cases that an accident does not involve the “use ... of physical force” within the definition of “crime of violence,” we must consider whether felony battery can occur when the actor neither knows nor should know that his act is “substantially likely,” Voisine, 136 S.Ct. at 2279, to cause grievous bodily harm.
The answer to that question is clear. In T.S. v. State, 965 So.2d 1288, 1290-91 (Fla. 2d Dist. Ct. App. 2007), the court held that felony battery includes no element requiring that the perpetrator intended to harm another or knew harm would result. See also Jefferies v. State, 849 So.2d 401, 404 (Fla. 2d Dist. Ct. App. 2003) (“Felony battery is clearly a species of the specific intent crime of battery ..., but with resulting and unintended great bodily harm”), receded from on other grounds by Hall v. State, 951 So.2d 91 (Fla. 2d. Dist. Ct. App. 2007). Because a’ person need not intend — or even have reason to expect— that his act will cause great bodily harm, see Voisine, 136 S.Ct. at 2279, in order to commit felony battery, the second element of felony battery fails the “use” requirement of the federal definition of “crime of violence.”
*1318 The Majority Opinion disagrees. To support its position, it contends that Leocal requires only an intent to touch, not an intent to harm.
To be sure, in a vacuum, one conceivable reading of Leocal is that it requires only an intent to touch, not an intent to harm. But Leocal is not the last word on the meaning of “use.” And the Supreme Court has since explained that that word anticipates that the person applying force have the “understanding that [doing so] is substantially likely to [cause harm].” Id. So when a person has no reason to believe that harm is substantially likely to result from his mere touch of another, under Voisine, he cannot be said to have “use[d]” physical force in the sense that the federal definition of “crime of violence” requires.[6]
In short, Supreme Court precedent demands the conclusion that Florida felony battery, when committed by mere touch, does not constitute a “crime of violence.”
II. The Majority Opinion’s reasons for resisting the conclusion dictated by Supreme Court precedent do not hold up to scrutiny.
The Majority Opinion pursues two overriding lines of attack to fight the Supreme-Court-precedent-dictated conclusion that Florida felony battery does not qualify as a “crime of violence.” Neither withstands scrutiny.
A.
First, the Majority Opinion plucks a single sentence out of the Supreme Court’s six-page discussion in Curtis Johnson, 559 U.S. at 138-143, 130 S.Ct. 1265, about the meaning of the words “physical force.” Then, looking solely to this sentence and ignoring the rest of the Supreme Court’s discussion, the Majority Opinion formulates what it calls the “capability test.” Under that test, a crime contains an element that requires the “use ... of physical force” if, regardless of its nature, the contact called for by the statute’s elements happens to actually result in “physical pain or injury to another person,” Maj. Op. at 1313 (quoting Curtis Johnson, 559 U.S. at 140, 130 S.Ct. 1265) (internal quotation marks omitted). For good measure, the Majority Opinion asserts that Curtis Johnson requires this “capability test.”[7] Id. at *1319 1302 (“the capability standard announced in Curtis Johnson controls the inquiry”).
Not so.
Indeed, the Supreme Court itself expressly confirmed as much four years after it issued Curtis Johnson,[8] when it released Castleman, 134 S.Ct. 1405. In Castleman, the Supreme Court determined that the misdemeanor offense of having “intentionally or knowingly cause[d] bodily injury to” a domestic relation constitutes “a misdemeanor crime of domestic violence” under 18 U.S.C. § 922(g)(9). Id. at 1408. As with the words “crime of violence” in U.S.S.G. § 2L1.2, the definition of “misdemeanor crime of domestic violence” under § 922(g)(9) requires, in relevant part, an element that involves “the use ... of physical force....” 18 U.S.C. § 921(g)(33)(A)(ii).
Construing the words “physical force” in § 921(g)(33)(A)(ii), Justice Sealia concurred specially because he reasoned that under Curtis Johnson, “it is impossible to cause bodily injury without using force ‘capable of producing that result.” Castleman, 134 S.Ct. at 1416-17 (Scalia, J., concurring). In other words, he applied the same “capability test” that the Majority Opinion urges binds us here.
The Supreme Court disagreed that Curtis Johnson had created any such test. It noted that Justice Scalia’s concurrence “suggests that [even the most minor “cut[s], abrasion[s] [or] bruise[s]”] necessitate violent force, under [Curtisj Johnson’s definition of that phrase” because they actually result in “bodily injury.” Id. at 1414 (citing id. at 1417). And then the Court expressly rejected the idea that it had previously adopted such a standard. Id.
Instead, the Court confirmed, as of the issuance of Castleman, that question remained undecided. Id. Nor does anything indicate that the Supreme Court has since adopted the “capability test.” So it is beyond all dispute that the Majority Opinion’s “capability test” is not, in fact, Supreme Court law. And the Majority Opinion’s insistence to the contrary is simply incorrect.
B.
But that is not the only problem with the Majority Opinion’s analysis. The Majority Opinion independently reasons that Florida felony battery necessarily requires the use of “physical force” as anticipated by § 2L1.2’s definition of “crime of violence” because, it posits, felony battery cannot be committed by mere touch. See Maj. Op. at 1303-07. To reach this conclusion, the Majority opinion takes two different tacks: (1) it ridicules the idea that felony battery could occur by mere touch and that the state would prosecute felony battery where the conduct involved only a mere touch; and (2) it relies on Florida intermediate-appellate law to support the notion that the second element of felony battery — the infliction of grievous bodily injury — necessarily precludes the possibility that felony battery may be committed by mere touch. See Maj. Op. at 1303-04. Each fails under examination.
1.
First, the Majority Opinion suggests that, as a matter of fact, grievous bodily injury cannot occur as the result of a mere *1320 touching, except in the case of a highly improbable “freak accident[j,” so it is practically impossible to commit felony battery by mere touch. Maj. Op. at 1306; see also id. at 1298 (“Unlike the simple battery statute at issue in Curtis Johnson, Florida’s felony battery statute requires more than a slight unwanted touch.”). Judge Wilson explains why this is incorrect. See Wilson Dissent at 1312 n,4.
I add that everyday experience tells us an unexpected touch can result in a start that causes a person to jerk involuntarily and sometimes, consequently, to injure himself. Indeed, some people tap or tickle another just to see their involuntary reactions, though they no doubt think at the time that they are engaging in harmless pranks. So conceiving of how a person could commit felony battery by mere touch does not demand factual imagination.
Nor, as the Majority Opinion asserts, does considering how a mere touch could result in grievous injury require “legal imagination.” See Maj. Op. at 1307 (quoting Moncrieffe v. Holder, 569 U.S. 184, 133 S.Ct. 1678, 1684-85, 185 L.Ed.2d 727 (2013)). As we have explained, a petitioner does not engage in “legal imagination” “when the statutory language itself ... creates the ‘realistic probability' that a state would apply the statute” to the identified least culpable conduct,” regardless of whether it actually has done so. Ramos v. U.S. Att’y Gen., 709 F.3d 1066, 1071-72 (11th Cir. 2013) (emphasis added).
The language of the felony-battery statute unquestionably crosses this threshold. We know that, by its language, the first element applies to mere touching. State v. Hearns, 961 So.2d 211 (Fla. 2007); Curtis Johnson, 559 U.S. 133, 130 S.Ct. 1265, 176 L.Ed.2d 1. We also know that the second element applies when grievous injury results from mere touching. And finally, we know that Florida has construed § 784.041 to lack any requirement concerning intent to harm. So the terms of the felony-battery statute itself make it plain beyond all doubt that mere touching that accidéntally results in serious bodily injury squarely satisfies the statute’s requirements. Indeed, the government conceded as much' at oral argument.[9] For this reason, despite the Majority Opinion’s reassurance that, “to [its] knowledge, there is ... no case in which [mere touching that accidentally resulted in serious bodily injury] has been held to constitute a felony battery under Florida Statute § 784.041,”[10] whether *1321 Florida has actually prosecuted such a case is entirely irrelevant to the analysis. See Ramos, 709 F.3d at 1071-72.
Contrary to the Majority Opinion’s suggestion, see Maj. Op. at 1306 (“there is no support in Florida law for the idea that Florida Statute § 784.041 is designed to criminalize the conduct described in the proffered hypotheticals”), the enacting legislators’ supposed intentions in designing Florida’s felony-battery statute — even if we could discern them (the Majority Opinion offers no evidence of them) — likewise have no bearing on the inquiry. The Supreme Court has advised us on more than one occasion that when the statutory language is clear, it does not matter what the legislature had in mind when it enacted the law. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). So all that matters to whether a mere touch that accidentally results in serious bodily injury will be prosecuted under the felony-battery law is whether the statutory language allows for it (it does) and whether the prosecuting authority at that time' decides to exercise her discretion to charge it.
2.
The Majority Opinion alternatively suggests that Florida courts have held that felony battery may not be committed by mere touch. It relies on the opinions of two Florida intermediate-appellate courts that have held that felony battery is a violent crime under Florida law because one of its elements requires serious bodily injury. See, e.g., Dominguez v. State, 98 So.3d 198, 200 (Fla. 2d Dist. Ct. App. 2012); see also Brooks v. State, 93 So.3d 402, 403 (Fla. 2d Dist. Ct. App. 2012); State v. Williams, 9 So.3d 658, 660 (Fla. 4th Dist. Ct. App. 2009). But these opinions do not purport to analyze the first element of felony battery. And only one of these opinions even mentions the binding Hearns opinion, 961 So.2d 211, while none explains how it may be harmonized with Hearns.
In Hearns, Florida’s Supreme Court considered the meaning under- Florida law of the element of simple battery[11] that requires a person to. have “[ajctually and intentionally touche[d] or str[uck] another person against the will of the other,” Fla. Stat. § 784.03(1). It explained that “any intentional touching, no matter how slight” — even “only nominal contact” — satisfies this element of simple battery. Id. at 218-19. Taking pains to make its position clear, the court noted that simply “tapping a law enforcement officer on the shoulder without consent” or “[a] childfs] shooting [of] a spitball at a school police officer”— acts that it described as “minor infractions” — likewise fulfills this element. Id. at 219.
Then, based on the Florida Supreme Court’s description of the meaning of this element, the United States Supreme Court determined that, when committed by mere touch, the crime of simple battery could not qualify as a violent felony under 18 U.S.C. § 924(e)(2)(B)(i) because it did not involve “physical force.” Curtis Johnson, 559 U.S. at 136-46, 130 S.Ct. 1265
*1322 This element of simple battery — the “[a]ctual[] and intentional!] touching] or striking] [of] another person against the will of the other” — is, as noted earlier in this dissent, precisely the same as the first element of felony battery. Compare Fla. Stat. § 784.03(l)(a) with Fla. Stat. § 784.041(l)(a). Yet two of Florida’s intermediate appellate courts endowed this element with a different meaning. And they did so without even addressing the element.
Florida’s Fourth District Court of Appeal (“DCA”) was the first court to conclude that felony battery under Fla. Stat. § 784.041 “cannot be committed without the use or threat of physical force or violence,” under Florida’s prison-releasee-reoffender sentencing provision. Williams, 9 So.3d at 660 (citation and internal quotation marks omitted). But it did so without any explanation beyond the observation that felony battery “requires great bodily harm, permanent disability, or permanent disfigurement.” Id. That, of course, is nothing more than a recognition of the contents of the second element of felony battery. Nothing in the court’s analysis addressed the first element of felony battery at all. In fact, the court’s analysis did not account for Hearns, for Hearns’s analysis of the first element to include mere touching, or for the fact that mere touching alone can result in “great bodily harm, permanent disability, or permanent disfigurement.” It didn’t even cite Hearns.
Then Florida’s Second DCA tackled the question in Brooks, 93 So.3d 402. But it simply quoted Williams to reach the same conclusion as the Second DCA. Id. at 403. And while it did include a citation to Hearns, the Fourth DCA’s parenthetical description of that case suggests that the court may have determined that felony battery “cannot be committed -without the use or threat of physical force or violence” because it may have mistakenly believed that felony battery requires “intentionally causing bodily harm.” See Brooks, 93 So.3d at 403 (emphasis added). As I have discussed, however, Florida law has been very clear in holding that felony battery contains no such requirement. See Jeffer-ies, 849 So.2d at 404 (“Felony battery is .:. a species of the specific intent crime of battery ..: but' with resulting and unintended great bodily harm.” (emphasis in original)). And under the Supreme Court’s “use” trilogy of cases,-at least under federal law, an element requiring an intent to cause bodily harm, coupled with an intentional touching for the purpose of doing so, is very different from an element requiring only a mere touching that is' not intended to inflict bodily injury. * -
Florida’s Second DCA next discussed the issue in dicta in Dominguez, 98 So.3d 198. Like the Williams Court, it did not cite Hearns and instead simply offered the same conclusory statement as Brooks and Williams: “[F]elony battery under section 784.041 — which requires that the defendant cause great bodily harm, permanent disability, or permanent disfigurement to the victim — ... cannot be committed without the use of physical force or violence.” Id. at 200.
a.
Despite my deep respect for the Florida intermediate courts of appeal, I cannot help but notice that these cases do not account for the fact that Hearns held that the exact same element as is the first element of felony battery---the “[a]ctual[ ] and [intentional!] touching] or striking] [of] another person against the will of the other” — can be committed by mere touch and does not require the use of any type of violent force. This seems to me to be a fatal flaw in these cases.
I am fully aware that where no state supreme-court case is on point, generally, *1323 federal courts must follow the decision of an intermediate appellate state court when it comes to matters of state law. See Benante v. Allstate Ins. Co., 477 F.2d 553, 554 (5th Cir. 1973).[12] But that rule is not absolute. Rather, when “other persuasive indications [exist] that the highest court of the state would decide otherwise,” id., we are obligated to heed them.
Here, Florida’s highest court has analyzed the meaning of “[ajctually and intentionally touching] or striking] another person against the will of the other,” and it has expressly concluded that that language includes mere touching. See Hearns, 961 So.2d at 218-19. I find that quite the “persuasive indication[ ]” that Florida’s Supreme Court would reach a conclusion about whether the first element of felony battery may be committed by mere touch, different from the intermediate courts of appeal. This is particularly the case since the intermediate courts of appeal’s decisions do not recognize that Florida’s Supreme Court has expressly held that the same words at issue here include mere touching, and those courts do not explain why those very same words should be construed differently in the case of felony battery.
b.
And if we view the decisions of the intermediate courts of appeal as resting on only the second element of felony battery — a sensible reading since the cases do not address the first element at all — the cases run head-on into the Leocal/Castleman/Voisine trilogy. As the Supreme Court has noted, “[t]he meaning of ‘physical force’ in [federal law] is a question of federal law, not state law.” Curtis Johnson, 559 U.S. at 138, 130 S.Ct. 1265. So, of course, is the meaning of “use” of physical force as that term exists in the federal definition of “crime of violence.” The intermediate courts of appeal here relied exclusively on the second element of felony battery as written to conclude that felony battery satisfies Florida’s definition of “physical force.” See, e.g., Williams, 9 So.3d at 660. But as discussed earlier in this dissent, the Leocal/Castleman/Voisine trilogy requires the conclusion that, under federal law, the second element of felony battery does not involve the “use ... of physical force” because felony battery has no intent requirement. For this reason, the decisions of Florida’s intermediate courts of appeal cannot justify the conclusion that felony battery necessarily and always requires the “use ... of physical force” under federal law, even when committed by mere touch that accidentally results in grievous bodily injury.
III. Conclusion
The Supreme Court has provided clear guidance to allow us to determine whether Florida felony battery qualifies as a “crime of violence” under § 2L1.2. We must follow that guidance. When we do, it is clear that Florida felony battery does not satisfy the federal definition of “crime of violence.” I therefore dissent.

. The Supreme Court’s comments arose in the context of considering the residual clause *1315 of the ACCA’s definition of "violent felony.” But the principle that we cannot determine whether a crime should be a violent felony simply by considering its name remains the same, whether we are discussing the residual clause or the elements clause of the ACCA's definition of "violent felony,” or, as here, the elements clause of the U.S. Sentencing Guidelines Manual § 2L1.2’s definition of "crime of violence.”

. Judge Wilson fully explains the basis for that ruling, so I do not repeat it here.

. Leocal suggests that its analysis does not construe the word “use/1 but Castleman and Voisine treat it as part of the line of cases interpreting the meaning of that word in. the elements clause.

. The Supreme Court recognized in Curtis Johnson, 559 U.S. at 140, 130 S.Ct. 1265, that § 16’s "elements clause” is materially indistinguishable from ACCA’s "elements clause.” And ACCA’s "elements clause,” in turn, is materially indistinguishable from § 2Ll,2’s "elements clause.”

. Castleman and Voisine addressed the meaning of "a misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9). 134 S.Ct. at 1408. As with the words "crime of violence” in U.S.S.G. § 2L1.2, the definition of "misdemeanor crime of domestic violence” under § 922(g)(9) requires, in relevant part, an element that involves “the use ... of physical force....” 18 U.S.C. § 921(g)(33)(A)(ii). So the cases addressing the federal definition of felony "crime of violence” can be instructive in construing the meaning of "misdemeanor crime of' domestic violence,” and vice-versa. See, e.g., Castleman, 134 S.Ct. at 1415 (citing Leocal in discussing what constitutes a "use” of force). Nevertheless, some differences between the analyses exist: ’ (1) “misdemeanor crime of violence” is governed by the common-law concept of "force,” see Castleman, 134 S.Ct. at 1414-15, whereas the federal definition of "crime of violence” that appears in the ACCA and the Sentencing Guidelines is not, see Curtis Johnson, 559 U.S. at 139-40, 130 S.Ct. 1265, That fact goes only to the meaning of "physical force” in both definitions, in that the common-law definition of "physical force” is broader and covers more conduct than does the definition of "physical force” within the federal definition of "crime of violence”; and (2) though the Supreme Court has held that a reckless act that results in harm to another entails a "use” of physical force trader the definition of “misdemeanor crime of domestic violence,” it has reserved the issue of- whether the same is true under the federal definition of “crime of violence,” as set forth at 18 U.S.C. § 16. See Voisine, 136 S.Ct. at 2279-80 & 2280 n.4. But there is no reason to believe that the Supreme Court woukbfind that anything less than recklessness would satisfy the elements clause of the federal definition of "crime of violence.” Indeed, the Supreme Court noted in Castle-man that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient.” Castleman, 134 S.Ct. at 1414 n.8. So while the definition of "a misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9) cannot tell us how narrow the definition of "the use ... of physical force” is under the federal definition of a felony "crime of violence," it can and does inform us about the broadest the meaning of the phrase can be.

. Aside from being the law under binding Supreme Court precedent, this makes perfect sense. Notice considerations dictate that the inquiry into whether a crime qualifies as a "crime of violence” under the "elements clause” should be forward-looking, from the perspective of the wrongdoer, not Monday-morning quarterbacking in hindsight. That way, when a person is held responsible for committing a "crime of violence,” that person either intended to commit a “crime of violence” or should have known before committing the act that resulted in the conviction that it was at least likely that his act would cause bodily harm.

. And going even further, the Majority Opinion suggests that we have always used the "capability test” since the Supreme Court issued Curtis Johnson. Maj. Op. at 1300. That is simply not accurate. True, we have quoted the same sentence from Curtis Johnson that the Majority Opinion relies on in isolation, but we have not previously concluded that the mere fact that an act results in bodily pain or harm necessarily means that the act employed "physical force.” To the contrary, in United States v. Rosales-Bruno, 676 F.3d 1017, 1021 (11th Cir. 2012), which the Majority Opinion cites as support for the notion that we have always employed the “capability test,” we were careful to put the quoted sentence from Curtis Johnson into context, noting that "[t]he ordinary meaning of the phrase ‘physical force’ suggests a category of violent, active crimes....” (quoting Leocal v. Ashcroft, 543 U.S. 1, 11, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (quotation marks omitted), and that “the term ‘physical force itself normally connotes force strong enough to constitute ‘power’ — and all the more so when it is contained in a definition of ‘violent felony,’ ” (quoting Curtis Johnson, 130 S.Ct. at 1272). As for the other two cases the Majority Opinion cites— United States v. Brown, 805 F.3d 1325, 1327 (11th Cir. 2015), and United States v. Hill, 799 *1319 F.3d 1318, 1322 (11th Cir. 2015), both analyzed crimes that by their terms required the use of violence, so there was no need to apply a “capability test,” and, in fact, we did not do so.

. Judge Wilson has already explained why Curtis Johnson itself did not create a "capability test” but rather construed the phrase "physical force” to refer to "substantial” and "violent” force — -the kind involved in "violent” felonies.

. The government tried to avoid the consequences of its concession by arguing that proximate-causation principles might prevent Florida from using the felony-battery statute to prosecute this type of conduct. But it also eventually conceded at oral argument that it is, at best, "not clear” whether proximate-causation requirements limit the application of Florida’s felony-battery statute. And neither the government nor we could find any cases where a Florida court appeared to have applied proximate-causation principles to felony battery. Plus even if Florida were to apply proximate-causation principles to felony battery, whether that would preclude prosecution of all mere touching that accidentally results in grievous injury is likewise unclear. Under these circumstances, and where the conduct at issue unambiguously falls within the bounds of the statute as written, we must presume that proximate-causation principles do not apply and conclude that mere touching that accidentally results in grave injury is the least culpable conduct that may be prosecuted under Florida’s felony-battery-statute.

. Nevertheless, a Westlaw search of the Florida caselaw database for " 'felony battery’ & 784.041” and a review of all notes of reported decisions under West’s Fla. Stat. Ann. § 784.041, where the basis for prosecution under the felony-battery statute was disclosed, ■ did not reveal a single reported case of felony battery that did not involve striking, other than the two cited in the Majority Opinion (the third case the Majority Opinion cited, Lewis v. State, 817 So.2d 933, 934 (Fla. 4th Dist. Ct. App. 2002), involved striking (punching), not mere touching), See Maj. Op. at 1305-06. In my view, two reported opinions *1321 is not a sufficient sample size to conclude that no one has ever been convicted of felony battery for mere-touching conduct. And even if it were, as noted above, mere touching that accidentally results in grievous bodily injury falls squarely within the language of the crime that § 784.041(1) makes criminal, That requires us to account for it.

. It did so in the context of evaluating whether the separate offense of battery on a law-enforcement officer, which entails simple . battery knowingly committed on a law-enforcement officer, necessarily qualifies as a forcible felony under Florida’s violent-career criminal statute, Fla. Stat. § 775.084(l)(d), and Florida’s prisoner-releasee-reoffender statute, Fla. Stat. § 775.082.

. Fifth Circuit cases issued before October 1, 1981, are binding authority in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209-1210 (11th Cir. 1981).