[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 19-13872, 20-11602
Non-Argument Calendar

_____

Agency No. A078-664-545

ARMAN ERITSIAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(February 3, 2021)

Before WILLIAM PRYOR, JILL PRYOR, and LAGOA, Circuit Judges.[1]

LAGOA, Circuit Judge:

---

[1] We withdraw our earlier opinion issued on November 17, 2020, following the government's motion to amend the opinion in light of *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020), consolidate Eritsian's two petitions for review in case numbers 19-13872 and 20-11602, and issue the following revised opinion.

Arman Eritsian seeks review of: (1) the Board of Immigrations Appeals's ("BIA") order affirming the immigration judge's order of removal and denial of his applications for asylum, withholding of removal, Convention Against Torture ("CAT") relief, and for a waiver of inadmissibility in conjunction with an adjustment of status; and (2) the BIA's order denying his motion to reopen his removal proceedings.  For the reasons discussed below, we deny in part and dismiss in part Eritsian's petition for review of the BIA's order denying his claims for relief in case number 19-13872 and deny in part and dismiss in part his petition for review of the BIA's order denying his motion to reopen the proceedings in case number 20-11602.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Eritsian is an ethnic Armenian Christian and native of Azerbaijan who originally entered the United States in 2000.  In 2002, an immigration judge in California granted Eritsian's application for asylum.  On July 20, 2007, Eritsian's legal status was adjusted to that of a lawful permanent resident of the United States, which was made retroactive to July 20, 2006.

In the years following his legal status change, Eritsian was convicted of two separate crimes.  On January 5, 2010, Eritsian was convicted in California for conspiracy to commit grand theft, in violation of California Penal Code §§ 182(a)(1) and 487(a) (2009) (the "2010 conviction"), and was subsequently sentenced to 180 days of imprisonment and three years of probation.  Then, on April 13, 2015, Eritsian

2

was convicted in the United States District Court for the Southern District of California for conspiracy to commit mail fraud, wire fraud, and money laundering, in violation of 18 U.S.C. § 371 (the "2015 conviction"). As a result of the 2015 conviction, Eritsian was sentenced to thirty months of imprisonment and ordered to pay $8,323 in restitution to the government.

On August 1, 2017, the United States Department of Homeland Security ("DHS") issued a Notice to Appear (the "NTA") to Eritsian while he was incarcerated with the Bureau of Prisons in Folkston, Georgia. In the NTA, Eritsian was charged as removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude that did not arise out of a single scheme of criminal misconduct. Eritsian was also charged as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony, i.e., an attempt or conspiracy to commit an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000, as described in 8 U.S.C. § 1101(a)(43)(M)(i) and (U). Eritsian was subsequently moved to the Stewart Detention Center in Lumpkin, Georgia. On January 10, 2018, the government submitted documents concerning Eritsian's 2010 and 2015 convictions to the original IJ.[2] As to the 2015 conviction for conspiracy to commit mail fraud, wire

---

[2] During the proceedings below, Eritsian's case was transferred to the immigration judge who ultimately issued the order of removal in this case.

3

fraud, and money laundering, the government submitted the grand jury's indictment from September 2013. Count 1 of the indictment alleged that, from 2010 to 2012, Eritsian and his co-conspirators unlawfully obtained personal identity theft information from several victims to file and receive fraudulent tax returns and launder the proceeds. The indictment further alleged that Eritsian and his co-conspirators had filed more than 400 fraudulent tax returns, claiming tax refunds totaling over $3,000,000, and had used complex methods to conceal their activities. The indictment listed specific actions showing that Eritsian and his co-conspirators had conspired to file a total of ten fraudulent tax returns and had claimed a total of approximately $87,547 in fraudulent returns. Eritsian pled guilty to Count 1 of the indictment.

On February 20, 2018, Eritsian submitted written pleadings in response to the NTA, admitting all the allegations therein but denying both charges of removability. Eritsian also filed a motion to terminate the removal proceedings against him. At a February 22, 2018, hearing, the original immigration judge denied the motion to terminate. As to the first charge of removability, the original immigration judge reviewed the indictment from Eritsian's 2015 conviction and found that Eritsian had been convicted of an aggravated felony, as the government had shown the loss to the victims for the offense was more than $10,000 based on the Supreme Court's decision in *Nijhawan v. Holder*, 557 U.S. 29 (2009). As to the second charge of

4

removability, the original immigration judge found the 2015 conviction to be a crime involving moral turpitude but continued the issue of whether the 2010 conviction was also for a crime involving moral turpitude.

Eritsian also filed a motion to transfer venue from Georgia to California, arguing that because he and his family had lived in California for almost twenty years and because the testimony of his parents, who had serious medical conditions that would prevent them from traveling to Georgia, would be critical to litigating his case, the proceedings should be moved to California. The original immigration judge denied this motion, noting that the rules of evidence were more relaxed in immigration proceedings and finding that, as such, Eritsian would not be prejudiced by having the venue of his case remain in Georgia. After the case was transferred from the original immigration judge to another immigration judge, Eritsian renewed his motion to transfer venue, which the new immigration judge denied at a September 13, 2018, hearing.

On December 11, 2018, Eritsian filed a motion to reconsider his motion to terminate the proceedings, presenting the same arguments as his original motion and further arguing that he was eligible for a waiver of inadmissibility. On January 15, 2019, the immigration judge construed the motion to reconsider as a second motion to terminate and denied the motion. In his order, the immigration judge determined that Eritsian's 2010 and 2015 convictions were both for crimes involving moral

turpitude and that the potential loss of conspiracy for which Eritsian was convicted in his 2015 conviction exceeded $10,000, rendering the offense an aggravated felony. As such, the immigration judge found that the government had established Eritsian's deportability on both charges.

Eritsian also filed an application for asylum, withholding of removal, and relief under provisions of CAT, as well as an application for a waiver of inadmissibility in conjunction with an adjustment of his legal status. In his pre-hearing brief, Eritsian argued that he was eligible for relief under 8 U.S.C. § 1182(h) because his wife was a United States citizen, he had adjusted his status to that of a lawful permanent resident while he was in the United States, and denial of relief would cause extreme hardship to himself and his family. Eritsian further asserted that several factors weighed in favor of granting him relief, including: (1) his strong family ties in the United States; (2) his nearly twenty years of residence in the United States; (3) the amount of hardship he and his family would experience if he was removed, as he would be unable to financially support his family or to care for his elderly parents and he would be at risk of persecution in Azerbaijan for being an ethnic Armenian Christian; (4) his value and service to the community; and (5) the evidence of his rehabilitation, remorse, and good character. Eritsian claimed that the only negative factors against granting him relief were his convictions, which he argued "were a result of his getting involved with the wrong people." On March 20,

2019, the immigration judge held a hearing on Eritsian's applications for relief. At the hearing, Eritsian, Eritsian's wife, and an expert witness on country conditions in Azerbaijan all testified, and Eritsian submitted exhibits and his father's affidavit to the immigration judge in support of his applications.

The immigration judge denied Eritsian's applications. Addressing Eritsian's waiver of inadmissibility claim, the immigration judge found that while Eritsian was not barred from receiving a waiver under § 1182(h) because his convictions were for nonviolent financial crimes, Eritsian had failed to show that he merited a favorable exercise of discretion or that his qualifying relatives would suffer extreme hardship upon his removal. As to Eritsian's withholding of removal claim, the immigration judge found that Eritsian had demonstrated past persecution such that he was entitled to a presumption of a future threat to his life or freedom, but that the government had rebutted that presumption by showing a fundamental change in circumstances in Azerbaijan regarding the treatment of Armenian Christians. As to the CAT claim, the immigration judge determined that Eritsian had not showed he would personally be at risk of torture upon his removal, as the likelihood of Eritsian being tortured in Azerbaijan was merely speculative.

Eritsian appealed the immigration judge's decision to the BIA. On September 5, 2019, the BIA upheld the immigration judge's decision and dismissed the appeal. As to removability, the BIA affirmed the immigration judge's determination that the

loss to Eritsian's victims exceeded $10,000, rendering the 2015 conviction an aggravated felony, and found that the immigration judge properly applied a "circumstance-specific analysis" to determine the loss amount.  The BIA rejected Eritsian's argument that the loss tied to the 2015 conviction was limited to the $8,323 that he owed as restitution, as the immigration judge was required to determine "the potential loss" associated with the offense.  The BIA noted that Count 1 of the indictment described Eritsian and his co-conspirators' scheme to defraud the Internal Revenue Service by filing fraudulent tax returns, which resulted in more than 400 fraudulently filed tax returns for the tax years of 2009 and 2011 for tax refunds totaling more than $3,000,000.  The BIA further noted that Count 1 of the indictment listed ten specific instances of fraudulently filed tax refunds that resulted in refunds totaling $87,547.

The BIA also affirmed the immigration judge's determination that Eritsian's two prior convictions both qualified as crimes involving moral turpitude.  As to the 2010 conviction for grand theft under California law, the BIA noted that "grand theft" under California Penal Code § 487(1) incorporated the general definition of "theft" set forth in California Penal Code § 484, which only covered takings that were committed with the specific intent to permanently deprive an owner of his property, and that "the United States Court of Appeals for the Ninth Circuit, while not the controlling circuit, has consistently held that California theft, whether grand

8

or petty, is a categorical [crime involving moral turpitude]." Accordingly, the BIA concluded that the immigration judge had properly found Eritsian removable.

The BIA then turned to Eritsian's applications for relief. As to Eritsian's application for a waiver of inadmissibility, the BIA found it was unnecessary to address the immigration judge's determination that Eritsian was ineligible for a waiver because he did not prove any qualifying relative would suffer hardship if he was removed, as Eritsian did "not merit such waiver in discretion." The BIA "weigh[ed] the adverse factors evidencing his undesirability as a permanent resident against the social and humane considerations presented on his behalf to determine whether, on balance, a grant of relief would be in the best interests of [the United States]." The BIA found that while Eritsian's equities, including his family ties, for receiving a waiver were substantial, the complexity of Eritsian's fraud scheme and "his repeated acts of fraud and the general dishonesty irrespective of any alleged rehabilitation" demonstrated that Eritsian's continued residence would not be in the best interests of the United States. As such, the BIA denied his application for a waiver of inadmissibility. As to the asylum claim, the BIA determined that Eritsian was not eligible for asylum because his 2015 conviction constituted an aggravated felony. The BIA also rejected Eritsian's withholding of removal claim, agreeing with the immigration judge's determination that the government had shown that there had been a fundamental change in circumstances in Azerbaijan such that

9

Eritsian "no longer ha[d] a clear probability of future persecution in Azerbaijan." Additionally, the BIA affirmed the immigration judge's denial of CAT relief. The BIA concluded that the IJ did not clearly err in finding that Eritsian had not presented sufficient evidence to establish that he would "more likely than not . . . be tortured if forced to return to Azerbaijan" and that his fear of torture was "speculative."

Finally, the BIA addressed Eritsian's due process claims. Reviewing the record, the BIA found that Eritsian's claim that the immigration judge was biased to be without merit, as the immigration judge's "desire for judicial efficiency does not equate to bias or pre-judgement [sic] of the respondent's claim." The BIA also rejected Eritsian's argument that his due process rights were violated by the immigration judge's denial of his motions to transfer venue based on Eritsian's family members living in California. The BIA found Eritsian had not demonstrated that he was deprived of a fair hearing, as Eritsian was able to submit affidavits from his family members in support of his applications and ultimately declined to pursue telephonic testimony from his parents. Accordingly, the BIA dismissed Eritsian's appeal. On October 2, 2019, Eritsian petitioned this Court for review of the BIA's determination in case number 19-13872.

On October 1, 2019, however, Eritsian filed a motion to reopen his removal proceedings (the "motion to reopen"). In this motion, Eritsian sought to present "new evidence" that he claimed was previously unavailable at his individual hearing

before the immigration judge that was material to the issues presented in his case. First, Eritsian stated that his spouse "was diagnosed with high blood pressure and chronic headaches" following his hearing and that "[d]ue to her current medical state, [she was] also receiving treatment for anxiety and depression." Because of this diagnosis, Eritsian claimed his spouse's daily expenses had increased and would have impacted the hardship analysis in his "Adjustment and Hardship Waiver arguments." Eritsian also asserted that his sister, who was living in the same household as his spouse and parents, moved out in May 2019, which resulted in his spouse becoming the sole provider for his elderly parents and his two minor children. He claimed that this situation was not present at the time of his hearing and "further materially impact[ed] the hardship analysis." Additionally, Eritsian stated that his parents, who were United States citizens, had "further deteriorated in their health conditions" since his hearing. Finally, Eritsian provided a "new expert witness affidavit" from Ronald Suny. Eritsian asserted that Suny's opinion lent "additional credibility to the expert witness that the Immigration Judge disregarded in the Individual Hearing and [was] thus material to [his] case" and that the affidavit contained previously unavailable material "such as the article referenced regarding the Armenian soccer play who could not travel to Azerbaijan due to security issues." In support of his motion, Eritsian attached financial records, affidavits from the expert, his spouse, and his sister, and medical records for his spouse and parents.

11

The government opposed Eritsian's motion to reopen. The government argued that the evidence was not material to the BIA's prior decision because the decision was not based on a lack of requisite hardship, but rather, due to Eritsian not warranting the favorable exercise of discretion. The government further argued that Eritsian had not presented any evidence demonstrating that the new expert affidavit or other country condition evidence was previously unavailable to him at his hearing.

On March 30, 2020, the BIA issued an order denying Eritsian's motion to reopen. The BIA explained that Eritsian had not established that the submitted evidence as to the physical, mental, and financial health of his spouse and parents would alter the findings and decision in his proceedings. While acknowledging the evidence indicated that Eritsian's spouse had a decline in her physical, mental, and financial health and that Eritsian provided "valuable assistance to her," the BIA explained that it had "upheld the denial of his application for adjustment of status pursuant to a waiver of inadmissibility . . . as a matter of discretion" and that "this evidence does not materially affect the discretionary denial of his application for relief given his criminal history and lack of candor regarding alleged rehabilitation." The BIA noted that Eritsian had failed to address other factors identified by the immigration judge. As to the evidence contained in the expert affidavit, the BIA determined that Eritsian failed to show it was material and previously unavailable. Specifically, the BIA noted that the "majority of the evidence . . . was available and

12

could have been presented before the Immigration Judge" and that the "only specific

event discussed after the . . . decision [was] an Armenian soccer player choosing not

to travel to Azerbaijan." Reviewing the article about the incident, the BIA observed

that neither the player nor his team explained what prompted the player's decision.

The BIA additionally explained that, "in affirming the Immigration Judge's decision

. . . , [it] agreed that the sporadic incidents of violence over a period of years does

not show that overall conditions have not significantly improved since [Eritsian] left

Azerbaijan in 1990."

Eritsian then filed a petition for review of the BIA's denial of his motion to

reopen on April 29, 2020, in case number 20-11602. We subsequently consolidated

Eritsian's two petitions.

## II.    ANALYSIS

In his petitions for review, Eritsian argues that the BIA erred for several

reasons. As to his petition in case number 19-13872, Eritsian claims that the BIA

erred in determining that he was a removable alien and ineligible for asylum because

his 2015 conviction was not for a crime that qualifies as an "aggravated felony" and

his 2010 state conviction was not for a "crime involving moral turpitude." Eritsian

also contends that the BIA erred in denying his various applications for relief and

that his due process rights were violated as the immigration judge exhibited bias

towards him and his motions to transfer venue were denied. As to his petition in

case number 20-11602, Eritsian claims that the BIA erred in denying his motion to reopen because documents he provided to the BIA were unavailable at the time of his individual hearing, were material to his removal defense claims, and would have influenced the outcome of his case. We address each petition's claims in turn.

## A.    Petition for Review in Case Number 19-13872

"As an initial matter, we must review whether we have jurisdiction to entertain [Eritsian's] petition for review." *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1240 (11th Cir. 2016). We determine the extent of our subject-matter jurisdiction de novo. *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1286 (11th Cir. 2014). This Court lacks jurisdiction to review any final removal order against an alien who is removable for committing "an aggravated felony" or two or more "crimes involving moral turpitude." *See* 8 U.S.C §§ 1227(a)(2)(A)(ii)–(iii), 1252(a)(2)(C). "However, we retain jurisdiction to determine whether the statutory conditions for limiting judicial review exist, i.e., whether the petitioner is '(1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense.'" *Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1283 (11th Cir. 2009) (quoting *Vuksanovic v. U.S. Att'y Gen.*, 439 F.3d 1308, 1310–11 (11th Cir. 2006)). If these conditions are met, § 1252(a)(2)(C) generally divests us of jurisdiction to review the removal order. *Id.* at 1283–84. Additionally, we retain jurisdiction to review constitutional claims and questions of law in an otherwise unreviewable order. *See* 8 U.S.C. § 1252(a)(2)(D).

14

Nonetheless, "a petitioner must allege at least a colorable constitutional violation." *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 (11th Cir. 2007) (quoting *Saloum v. U.S. Citizenship & Immigr. Servs.*, 437 F.3d 238, 243 (2d Cir. 2006)). A petitioner cannot "create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." *Id.* (quoting *Torres–Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)). We therefore first address Eritsian's arguments concerning removability.

Eritsian contends that the BIA erred in determining that his 2015 conviction for conspiracy to commit fraud qualified as an "aggravated felony" and that his 2010 conviction for conspiracy to commit grand theft constituted a "crime involving moral turpitude." "We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision. Where the BIA agrees with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of that agreement." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (footnote omitted) (citation omitted). Whether a conviction qualifies as an "aggravated felony" is a legal question that we review *de novo*. *Dixon v. U.S. Att'y Gen.*, 768 F.3d 1339, 1341 (11th Cir. 2014). Likewise, "we review *de novo* the legal question of whether an alien's conviction qualifies as a crime involving moral turpitude." *Gelin*, 837 F.3d at 1240.

15

We first consider whether the BIA correctly determined that Eritsian's 2015 conviction was for an offense that constitutes an aggravated felony. Under 8 U.S.C. § 1101(a)(43), an "aggravated felony" is defined, in relevant part, as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" or "an attempt or conspiracy to commit an offense described in [§ 1101(a)(43)]." 8 U.S.C. § 1101(a)(43)(M)(i), (U). With respect to a conspiracy to commit a fraud or deceit crime, the BIA has determined that the government "need not prove an *actual* loss to victims of more than $10,000; instead, it will be sufficient if the *potential* loss was more than $10,000." *In re S-I-K*, 24 I. & N. Dec. 324, 327 (BIA 2007) (emphasis in original) (citing *Li v. Ashcroft*, 389 F.3d 892, 896 n.8 (9th Cir. 2004)). The government has the burden of showing the loss amount by "clear and convincing" evidence. *Nijhawan*, 557 U.S. at 42 (quoting 8 U.S.C. § 1229a(c)(3)(A)).

The Supreme Court's decision in *Nijhawan* is instructive. In *Nijhawan*, the petitioner was an alien who was convicted of conspiracy to commit mail fraud, wire fraud, bank fraud, and money laundering. *Id.* at 32. The jury made no finding about the loss amount, and the statutes the petitioner was convicted under were silent as to the loss amounts. *See id.* at 32–33. But the petitioner stipulated at sentencing that the loss amount exceeded $100 million, and the court ordered restitution in the amount of $683 million. *Id.* at 32. Following the petitioner's conviction, the

16

government sought to remove the petitioner, claiming that he had been convicted of an aggravated felony. *Id.* at 33. The Supreme Court held that "Congress did not intend [§ 1101(a)(43)(M)(i)'s] monetary threshold to be applied categorically, *i.e.*, to only those fraud and deceit crimes generically defined to include that threshold." *Id.* at 40. Rather, the Supreme Court determined that "the monetary threshold applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion," i.e., looking to "the facts and circumstances underlying an offender's conviction." *Id.* at 34, 40. The Court noted that the loss amount "must 'be tied to the specific counts covered by the conviction.'" *Id.* at 42 (quoting *Alaka v. Att'y Gen. of U.S.*, 456 F.3d 88, 107 (3d Cir. 2006)). Moreover, the Court found nothing unfair about the immigration judge relying upon "earlier sentencing-related material," including the petitioner's stipulation and the restitution order. *Id.* at 42.

While Eritsian concedes that *Nijhawan* is controlling, he contends that this case is distinguishable because, unlike in *Nijhawan*, the amount Eritsian was required to pay as restitution in his 2015 conviction was $8,323, an amount lower than the $10,000 threshold in § 1101(a)(43)(M)(i). Eritsian contends that the restitution order is the most clear and convincing evidence of the actual loss to the victims tied to his 2015 conviction and that, as such, the BIA erred in determining the 2015 conviction was an aggravated felony.

17

We disagree. The BIA properly applied a circumstances-specific approach to determine the loss tied to the 2015 conviction. Although Eritsian ultimately only had to pay $8,323 in restitution after he pled guilty, the BIA was permitted to look to the grand jury's indictment in determining the loss. *See Nijhawan*, 557 U.S. at 42. Count 1 of the indictment detailed an extensive conspiracy by Eritsian and his co-conspirators to file more than 400 fraudulent tax returns and to obtain tax refunds totaling over $3,000,000. Additionally, Count 1 listed ten specific tax returns that were fraudulently filed that resulted in a total of $87,547 of fraudulent tax refunds being dispersed. Count 1 of the indictment, which Eritsian pled guilty to, thus shows that the 2015 conviction involved losses that were much greater than the $10,000 threshold. Accordingly, the BIA did not err by finding that Eritsian's 2015 conviction was for an offense qualifying as an aggravated felony and that he was removable under § 1227(a)(2)(A)(iii).

Although we find that the BIA correctly determined that Eritsian was removable under § 1227(a)(2)(A)(iii), for the sake of completeness, we address Eritsian's argument that he was not removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for committing two or more crimes involving moral turpitude. While "moral turpitude" is not statutorily defined, "this Court has held that it involves an 'act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule

18

of right and duty between man and man.'" *Gelin*, 837 F.3d at 1240 (quoting *Cano v. U.S. Att'y Gen.*, 709 F.3d 1052, 1053 (11th Cir. 2013)). Generally, we use the categorical approach to determine whether a conviction for a particular crime qualifies as a "crime[] involving moral turpitude." *Id.* at 1241. Under this approach, "we consider only the fact of conviction and the statutory definition of the offense, rather than the specific facts underlying the defendant's case." *Id.*; *see also Itani v. Ashcroft*, 298 F.3d 1213, 1215–16 (11th Cir. 2002) ("Whether a crime involves the depravity or fraud necessary to be one of moral turpitude depends upon the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct."). "In doing so, we ask 'whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude.'" *Gelin*, 837 F.3d at 1241 (quoting *Keungne*, 561 F.3d at 1284 n.3). In analyzing whether a state law offense constitutes a crime involving moral turpitude, this Court "may rely on court decisions in the convicting jurisdiction that interpret the meaning of the statutory language." *Id.* at 1243.

Eritsian contends that the BIA erred in finding that his 2010 conviction for conspiracy to commit grand theft in violation of California Penal Code §§ 182(a)(1) and 487(a) was a crime involving moral turpitude. Specifically, Eritsian claims that the California grand theft statute does not require that the offender intend to

19

permanently deprive the victim of his or her property.  This argument is without merit.

Under the California Penal Code § 487(a) (2009) in effect at the time Eritsian was convicted of the offense,[3] "grand theft" was defined as theft committed "[w]hen the money, labor, or real or personal property taken is of a value exceeding four hundred dollars ($400)."  California law further provides that a "theft" is committed by any person who

> shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another . . . .

*Id.* § 484(a).  The Supreme Court of California has long held that California's theft statutes require "the intent to *permanently* deprive the owner of possession of the property."  *People v. Avery*, 38 P.3d 1, 3 (Cal. 2002) (emphasis in original); *see also Castillo–Cruz v. Holder*, 581 F.3d 1154, 1160 (9th Cir. 2009) ("Under Californian law, a conviction for grand theft or petty theft . . . requires, in common with other crimes of moral turpitude, 'the specific intent to deprive the victim of his property

---

[3] California's grand theft statute was subsequently amended following Eritsian's 2010 conviction.

permanently.'" (quoting *In re Albert A.*, 55 Cal. Rptr. 2d 217, 219 (Cal. Ct. App. 1996)); *People v. Bullard*, 460 P.3d 262, 266 (Cal. 2020) (noting that in the context of grand theft of an automobile under California Penal Code § 487, the "statute had been interpreted to require an intent to deprive the car owner 'permanently of its value and to appropriate the property to the use and benefit of the person taking it'" (quoting *People v. Kehoe*, 204 P.2d 321, 323 (Cal. 1949))).  As we previously noted in an unpublished opinion, other "federal circuits courts have long considered theft offenses . . . to involve moral turpitude." *Jaimes–Lopez v. U.S. Att'y Gen.*, 675 F. App'x 870, 874 (11th Cir. 2017); *see, e.g.*, *Mendoza v. Holder*, 623 F.3d 1299, 1303–04 & n.8 (9th Cir. 2010) ("The BIA's determination [that robbery is a crime involving moral turpitude] is consistent with precedent in this and other circuits that theft crimes are [crimes involving moral turpitude]." (footnote omitted)).  Indeed, in *United States ex rel. McKenzie v. Savoretti*, 200 F.2d 546, 548 (5th Cir. 1952), a decision which is binding upon us,[4] the former Fifth Circuit held that "the crimes of forgery, larceny, uttering, and stealing . . . are regarded as involving moral turpitude."  Additionally, we note that the BIA has long held that "a theft offense categorically involves moral turpitude if—and only if—it is committed with the intent to *permanently* deprive an owner of property." *In re Diaz–Lizarraga*, 26 I. &

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit prior to October 1, 1981).

N. Dec. 847, 849–50 (BIA 2016) (emphasis in original) (collecting cases); *see also In re Flores*, 17 I. & N. Dec. 225, 228 (BIA 1980) ("A conspiracy to commit an offense involves moral turpitude only when the underlying substantive offense is a crime involving moral turpitude."). Based on these principles, we find that Eritsian's 2010 conviction for committing grand theft in violation of California Penal Code § 487(a) to be a crime involving moral turpitude.[5] As Eritsian does not dispute that his 2015 conviction was for a crime involving moral turpitude, the BIA did not err in finding him removable for committing two crimes involving moral turpitude under § 1227(a)(2)(A)(ii).

Because the BIA correctly found that Eritsian was removable for committing an aggravated felony as well as for committing two crimes involving moral turpitude, we lack jurisdiction to review his final removal order, *see* 8 U.S.C §§ 1227(a)(2)(A)(ii)-(iii), 1252(a)(2)(C), except to review constitutional claims and questions of law, *see id.* § 1252(a)(2)(D). Regarding Eritsian's asylum claim, the BIA correctly found, as a matter of law, that Eritsian was ineligible for asylum as an alien who was "convicted by a final judgment of a particularly serious crime," i.e., an "aggravated felony." *See id.* § 1158(b)(2)(A)(ii), (B)(i).

---

[5] We note that the Ninth Circuit has similarly held California theft crimes to be crimes involving moral turpitude. *See Flores Juarez v. Mukasey*, 530 F.3d 1020, 1022 (9th Cir. 2008) (stating that petty theft offenses under California Penal Code §§ 484 and 488 are crimes of moral turpitude).

22

Eritsian further contends that the BIA erred in denying his application for a waiver of inadmissibility, arguing that he should have been granted a waiver based on the extreme hardship his removal would cause to his family.  Under 8 U.S.C. § 1252(a)(2)(B), our jurisdiction is limited in reviewing denials of discretionary relief such as waivers of inadmissibility under 8 U.S.C. § 1182(h).  Indeed, "we are precluded from reviewing 'any judgment regarding the granting of relief under [8 U.S.C. §§] 1182(h), 1182(i), 1229b, 1229c, or 1255' except to the extent that such review involves constitutional claims or questions of law."  *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1262 (11th Cir. 2020) (en banc) (quoting § 1252(a)(2)(B)(i), (D)).  A "garden-variety abuse of discretion argument" that an immigration judge failed to properly weigh the factual scenario that the alien presented does not raise a legal question.  *See Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1196–97 (11th Cir. 2008).  Therefore, because Eritsian's arguments do not involve constitutional claims or questions of law but rather only concern the BIA's discretionary decision in weighing the facts and denying his application for waiver of inadmissibility, we are unable to review his waiver of inadmissibility claim.

We next address Eritsian's CAT claim.  During a removal proceeding, an alien may raise a claim under the CAT by demonstrating that "he likely would be tortured if removed to the designated country of removal."  *Nasrallah v. Barr*, 140 S. Ct. 1683, 1687 (2020).  This Court had previously held that, under § 1252(a)(2)(C), the

23

BIA's finding that "a petitioner seeking deferral of removal under the [CAT] failed to meet his burden of establishing that it was more likely than not that he would be tortured is an unreviewable fact finding." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1231 (11th Cir. 2013); *accord Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 532 (11th Cir. 2013), *abrogated by Nasrallah*, 140 S. Ct. 1683.  Following the parties' briefing, however, the United States Supreme Court issued its decision *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020).  In *Nasrallah*, the Supreme Court resolved a circuit split regarding appellate review of CAT claims and held that a noncitizen may obtain judicial review of factual challenges to CAT orders, abrogating our decision in *Cole*. *Id.* at 1689, 1692.  In doing so, the Supreme Court analyzed whether § 1252(a)(2)(C)'s preclusion of judicial review of factual challenges to final orders or removal extended to CAT orders.  *Id.* at 1690–91.  The Supreme Court found that "[a] CAT order is not itself a final order of removal because it is not an order 'concluding that the alien is deportable or ordering deportation'" and that "a CAT order does not disturb the final order of removal."  *Id.* at 1691.  Thus, and as the government now concedes, we have jurisdiction to review Eritsian's factual challenges to the denial of his CAT claim.

Nevertheless, our standard of review for a factual challenge to the denial of CAT relief is "highly deferential."  *Id.* at 1692.  In reviewing a CAT claim, we apply the "substantial-evidence standard: The agency's 'findings of fact are *conclusive*

unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (emphasis added) (quoting § 1252(b)(4)(B)).

Here, the immigration judge, after considering the evidence and the expert's testimony, found that the probability Eritsian would be "harmed, much less tortured, in Azerbaijan [was] unknown, as it hinge[d] on chains of events that [were] uncertain to occur" and that his fears "appear to be solely based upon unsubstantiated reports as opposed to personal knowledge." Additionally, the BIA found that the immigration judge did not commit clear error in rejecting the CAT claim. The BIA noted that "the evidence in this matter, including the credible testimony of [Eritsian] as well as expert testimony and the background evidence submitted," did not support Eritsian's claims that "he will more likely than not suffer torture in Azerbaijan based on his past harm almost three decades ago or the fact that he is returning from the United States and may not be able to obtain identification documentation." While noting that Eritsian's expert testified about "isolated incidents of violence against ethnic Armenians" and recognizing that he "may face some dangers," the BIA explained that the immigration judge was not required to accept the expert's ultimate conclusions as to country conditions in Azerbaijan. As the immigration judge "clearly considered the expert's statement regarding general conditions in Azerbaijan" and did not make factual findings that were clearly erroneous in light of

25

the evidence, the BIA concluded that the immigration judge did not err in denying Eritsian CAT relief.

Reviewing the record, and given our highly deferential review, we find no error in the denial of Eritsian's CAT claim by the BIA and immigration judge as speculative. Indeed, substantial evidence supports their finding that the CAT claim was speculative. Eritsian's last known incident of harm in Azerbaijan was in 1990—almost three decades ago—and Eritsian has not resided in Azerbaijan since 1994. While Eritsian's expert initially testified that he believed it was likely Eritsian would be considered a spy and be tortured and killed by the Azerbaijani government, his expert later backtracked during cross-examination, testifying that Eritsian "would be investigated" by Azerbaijani authorities upon reentering the country, but only "*might* be killed" after that investigation. (emphasis added). Additionally, recent human rights reports issued by the United States State Department explain that Armenians are an ethnic minority in Azerbaijan, that individuals with Armenian-sounding names are often subjected to additional screening at border crossings and occasionally denied entrance to the country, and that an entire generation in Azerbaijan had grown up listening to "hate speech" against Armenians. These State Department reports, however, do not state that Armenians are attacked and tortured specifically because they are Armenian. Moreover, while conflict exists between Armenia and Azerbaijan over the Nagomo-Karabakh region, and a 2017 travel

warning as to Azerbaijan warned United States citizens of Armenian descent of "anti-Armenian sentiments" in Azerbaijan, that travel warning did not warn of any threats of torture based on an individual's Armenian ethnicity. And there is no evidence in the record that the Azerbaijani government is even aware of Eritsian or his Armenian ethnicity. Based on the record before us, a reasonable adjudicator could find Eritsian's claim that "he will more likely than not suffer torture in Azerbaijan" to be speculative such that he is not entitled to CAT relief. We thus deny the petition as to Eritsian's CAT claim.

As to Eritsian's other applications for relief, he has not raised any colorable constitution claims or questions of law over which we can exercise our jurisdiction. Indeed, we are unable to review Eritsian's withholding of removal claim, as his argument that the BIA erred in finding that Eritsian would not face future persecution in Azerbaijan is not based on a colorable constitution violation or question of law. *See Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 802 (11th Cir. 2016) (explaining that this Court generally lacks "jurisdiction to review a denial of withholding of removal for a criminal alien" except for claims of legal error); *see also Arias*, 482 F.3d at 1284.

Finally, we briefly address Eritsian's argument that he was deprived of due process. We review *de novo* constitutional challenges, including claims alleging due process violations. *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 808 (11th Cir. 2006). "It is

27

well-established that the Fifth Amendment entitles petitioners in removal proceedings to due process of the law." *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). "Due process requires that aliens be given notice and an opportunity to be heard in their removal proceedings." *Id.* A petitioner alleging a due process violation "must show that [he] was deprived of liberty without due process of law and that the purported errors caused [him] substantial prejudice," which requires a demonstration that "in the absence of the alleged violations, the outcome of the proceeding would have been different." *Id.* "However, 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.'" *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009) (quoting *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 (11th Cir. 2008)). Under 8 C.F.R. § 1003.20, an immigration judge has the discretion to change venue upon motion by one of the parties if there is "good cause."

Eritsian contends that his due process rights were violated by the multiple denials of his motions to transfer venue, arguing that he was unable to present "critical and compelling testimony from his parents" to corroborate his claims at his hearing and that, as such, he was severely prejudiced. We disagree, as Eritsian has failed to demonstrate how he was deprived of a fair hearing or suffered substantial prejudice from the denial of the motions to transfer venue. While Eritsian's parents were unable to testify in person, Eritsian was able to present his father's affidavit,

28

photo evidence of his father's wounds, and his expert witness's in-person testimony. Additionally, the BIA noted that the immigration judge discussed the possibility of telephonic testimony for Eritsian's parents but that Eritsian ultimately decided not to pursue that option. Eritsian also broadly claims that the immigration judge was biased in evaluating his requests for relief and thus violated his due process rights. However, this claim of bias by the immigration judge is merely an abuse of discretion argument cloaked as a constitutional violation. *See Arias*, 482 F.3d at 1284. As such, we lack jurisdiction to review the claim.

## B.    Petition for Review in Case Number 20-11602

Eritsian further argues that the BIA erred in denying his motion to reopen because the BIA did not clearly explain the basis for its decision and because the evidence he provided was not available at the time of his hearing, was material to his removal defense claims, and would have influenced the outcome of his case. These arguments are without merit.

Generally, "[a]n alien may file one motion to reopen proceedings," which "shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(A), (C); *accord* 8 C.F.R. § 1003.2(c). "The standard for granting a motion to reopen immigration proceedings is high, and an Immigration Judge is afforded significant discretion in deciding whether to do so. Reopening may be warranted only where the movant presents evidence that is new,

material, and unavailable when the removal order was entered." *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018). Thus, the BIA may deny a motion to reopen where (1) the movant has failed to establish a prima facie case for the relief sought; (2) the movant has failed to introduce evidence that was material and previously unavailable; and (3) in cases of discretionary relief, the movant would not be entitled to discretionary relief. *INS v. Abudu*, 485 U.S. 94, 104–05 (1988); *Bing Quan Lin*, 881 F.3d at 873. "An alien who attempts to show that the evidence is material bears a heavy burden and must present evidence that demonstrates that, if the proceedings were opened, the new evidence would likely change the result in the case." *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256–57 (11th Cir. 2009).

"Motions to reopen in removal proceedings are particularly disfavored," *id.* at 1256, and we review the BIA's denial of a motion to reopen for an abuse of discretion, *see Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008). And we review a claim of legal error, such as a claim that the BIA did not provide reasoned consideration of its decision, *de novo*. *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018). *Id.*

Eritsian first argues that the BIA abused its discretion by failing to clearly explain the basis for its decision in denying his motion to reopen proceedings. We

30

disagree, as the BIA provided clear and reasoned consideration for its decision to deny the motion to reopen.

In its order denying Eritsian's motion to reopen, the BIA clearly stated that the motion "will be denied because [Eritsian] has not demonstrated that the evidence in support of his motion is material and was not available and could not have been discovered or presented before the Immigration Judge." The BIA found that Eritsian had not established the evidence submitted regarding the physical, mental, and financial health of his spouse and his parents would alter the findings and decision of his proceedings. The BIA noted that it had upheld the denial of his waiver of inadmissibility claim "as a matter of discretion" and that the "evidence [did] not materially affect the discretionary denial . . . given his criminal history and lack of candor regarding alleged rehabilitation." As to the evidence contained in the expert's affidavit, the BIA found that Eritsian failed to establish that the evidence was "material and was not available and could not have been discovered or presented before the Immigration Judge." The BIA explained that the "majority of the evidence in the affidavit" was previously available and could have been presented to the immigration judge and that there was no explanation in the article about what prompted an Armenian soccer player's decision to not to travel to Azerbaijan, which was the "only specific event discussed that occurred after the Immigration Judge's decision." The BIA also referenced its original conclusion that the "sporadic

31

incidents of violence over a period of years does not show that overall conditions have not significant improved since [Eritsian] left Azerbaijan." As the BIA clearly explained its decision to deny the motion to reopen, we thus deny Eritsian's petition in this respect.

Eritsian also contends that the BIA erred in denying his motion to reopen because the evidence was not available at the time of his hearing, was material to his claims, and would have influenced the outcome of his case. As explained above, in *Patel*, this Court, sitting en banc, explained that it was "precluded from reviewing 'any judgment regarding the granting of relief under [8 U.S.C. §§] 1182(h), 1182(i), 1229b, 1229c, or 1255' except to the extent that such review involves constitutional claims or questions of law." *Patel*, 971 F.3d at 1262 (quoting § 1252(a)(2)(B)(i), (D)). Thus, under § 1252(a)(2)(B), our jurisdiction is limited in reviewing the denial of a waiver of inadmissibility under § 1182(h) to constitutional claims or questions of law. And, while *Patel* did not involve a motion to reopen removal proceedings, this Court, in an unpublished opinion, has extended "the umbrella of our . . . interpretation of § 1252(a)(2)(B)(i) in *Patel*" to the review of denial of a motion to reopen proceedings based on a claim for relief under the provisions enumerated by § 1252(a)(2)(B)(i). *See Lara v. U.S. Att'y Gen.*, 826 F. App'x 869, 870–71 (11th Cir. 2020) (unpublished).

32

In his motion to reopen, Eritsian stated that the "new evidence presented" was material "in particular to the country conditions in Azerbaijan and the hardship evidence in his Adjustment [of status and waiver of inadmissibility] case."  As to Eritsian's arguments concerning his motion to reopen based on the denial of his waiver of inadmissibility claim, those arguments do not raise constitutional claims or questions of law.  Rather, the "new" evidence Eritsian sought to present as the basis of his motion to reopen concerns the BIA's factual determinations regarding the denial of his waiver of inadmissibility claim, i.e., evidence of his family's hardships and country conditions in Azerb aijan.  *See Patel*, 971 F.3d at 1279; *Lara*, 826 F. App'x at 870–71.  We therefore lack jurisdiction to review the petition as to the denial of his motion to reopen as to Eritsian's waiver of inadmissibility claim.

While Eritsian's motion to reopen only expressly mentions his inadmissibility of waiver claim, we also address his argument to the extent he sought to reopen the proceedings as to his withholding of removal claim and CAT claim by presenting evidence contained in the affidavit of his expert witness, Suny, concerning country conditions in Azerbaijan.  In his motion to reopen, Eritsian sought to present Suny's affidavit to lend "additional credibility" to the expert witness's testimony that was presented at his hearing before the immigration judge.  Eritsian argues that this evidence was not available at the time of his hearing before the immigration judge and was material to his case.

33

We find that the BIA did not abuse its discretion as to these claims. As the BIA explained, most of the evidence contained in Suny's affidavit was available at the time of Eritsian's hearing, and the only specific event discussed after the hearing—the article concerning the Armenian soccer player—would not change the results of his proceedings. Indeed, the article offered no explanation as to why that Armenian soccer player chose not to travel to Azerbaijan and thus does not demonstrate that Eritsian would more likely than not be tortured if he returned to Azerbaijan. And Eritsian does not explain on appeal what other evidence contained in Suny's affidavit was previously unavailable or how that evidence would be material. Instead, he simply argues that he "had no way of knowing that the immigration judge would not give weight to his [original] expert's opinions."

Because the BIA gave reasoned consideration to Eritsian's motion to reopen and none of the evidence was either unavailable at the time of his hearing or material, we find the BIA did not err in denying the motion as to the withholding of removal and CAT claims.

## III. CONCLUSION

Accordingly, the BIA did not err in finding that Eritsian was removable both on the basis that he committed an aggravated felony and on the basis that he committed two crimes involving moral turpitude. We therefore deny his petition as to his removability claims as well as his asylum claim, as Eritsian is ineligible for

asylum for having been convicted of an aggravated felony.  Furthermore, we deny Eritsian's CAT claim, as a reasonable adjudicator could conclude that Eritsian was not entitled to CAT relief, and dismiss the petition as to Eritsian's claims for waiver of inadmissibility and withholding of removal, as we lack jurisdiction to review those claims.  Finally, we deny in part and dismiss in part Eritsian's petition for review of the denial of his motion to reopen his removal proceedings.

**PETITIONS DENIED IN PART, DISMISSED IN PART.**